L. Keeliikolani *v.* James Robinson.

# SUPREME COURT—IN EQUITY.

## L. KEELIIKOLANI *vs.* JAMES ROBINSON.

THE Court, sitting as a Court of Equity, will exercise a sound discretion in taking jurisdiction of a case cognizable at law, and having rightful jurisdiction for the purpose of discovery, would also give relief.

Where a defendant was called upon to account and pay over to the complainant a certain proportion of the receipts and profits of a certain wharf and premises, assigned to the said defendant by an agreement made with the ancestor of complainant, it was held on demurrer that the bill should allege that the respondent took possession of the premises in pursuance of his contract, and that he *used* the premises, deriving profits from their use ; or else the complainant can not have a decree for an account of profits. Held, also, that the present possession of the premises by defendant must be alleged, otherwise the complainant can not have a decree of surrender of possession.

L. Keeliikolani *v.* James Robinson.

A derivative title must be clearly and fully set forth to compel an answer from the respondent in possession.

A party can not controvert the title of the person from whom he holds an estate, and this principle applies to the title of the heir, when the lessor dies during the term.

When no time is specified in an agreement at which an account shall be made : Held, on demurrer, that the bill should allege that a demand for an account has been made and refused.

The agreement showing that the parties to it should pay equal proportions for the repairs on the premises leased, and the assignee or lessee of the premises having made the repairs at his own expense, without obtaining proportional payment from the othar party ; it was held that the application of the share of the receipts belonging to such party was properly made by the party incurring the expense of the repairs—in payment of what was due from the other party for his part of the cost of the repairs.

Such proportion of the cost of repairs regarded as an offset, if rents have been received.

Messrs. Bates and Montgomery, for defendant, having filed a demurrer, on the 28th of February last, to the bill filed in this suit, the points were argued before the Chief Justice on the 2d and 4th of March following, and on the 6th of that month the Chief Justice delivered his decision as follows :

This is a bill in Equity, in which it is alleged there was an agreement in writing between Kalaimoku and said defendant, in the following terms. viz :

" Know all men by these presents that I, Kalaimoku, commonly called William Pitt, Esq., do hereby assign unto James Robinson, his heirs, executors, administrators and assigns, one half of the wharf, commonly called the King's wharf, situated near the southwest angle of the Fort in Honolulu, extending in front one hundred yards or thereabouts, and running back one hundred yards or thereabouts, upon the following conditions : First—The said James Robinson doth hereby bind himself, his heirs, executors, administrators and assigns, to pay one half of. all the expenses incurred in altering, repairing or improving the said wharf, and to pay to Kalaimoku, his heirs, executors, administrators and assigns, one half of all the moneys received for the use of such wharf and premises ; and I, Kalaimoku, do hereby agree to pay one half of all the expenses incurred in altering, repairing and improving the said wharf. And we do hereby bind ourselves, our heirs, executors, administrators and

assigns, to fulfill the above agreement. Given under our respective hands and seals at Honolulu, this 11th day of January, in the year of Our Lord 1827.

     (Signed)      [L. S.]      " KALAIMOKU,

                 [L. S.[      " JAMES ROBINSON."

, The plaintiff claims by the agreement to receive one half of the proceeds of the premises, arising from the rents, wharfage, or use as a ship yard, after deducting one half of the expenses of altering, repairing, or improving said yard. That Kalaimoku died in 1829, leaving W. P. Leleiohoku, his son, his heir, who died in 1848, leaving an infant son his heir, John Pitt Kinau, who died in 1859, being still a minor, and that the plaintiff was the mother of John Pitt Kinau and his lawful heir ; and the complainant avers that no account has been rendered of the net receipts and profits of said wharf and premises, and that a large sum is now due ; that the agreement is no longer in force as against her, and that the entire use of the property is her's. Wherefore, the plaintiff prays that the defendant may be required to account and pay whatever amount may be due, and to surrender the use and occupation of the premises ; and that such other things may be done in the premises as to truth and justice may appertain.

The defendant demurs, first on the ground of jurisdiction.

The Court, in the case of Ewing and Miller vs. Janion, (1 Haw. Rep., p. 66,) declares that on a bill of discovery in a matter of account filed in the Equity side of the Court, that the bill would be entertained notwithstandig the case was one cognizable at law ; and the Equity Court having rightful jurisdiction for the purpose of discovery, would also give relief. The Court take the position that they will exercise in such cases a sound discretion in exercising jurisdiction. In the case of Carlisle vs. Wilson, (13 Vesey, 278, 279,) Chancellor Erskine says, " that it cannot be maintained that this Court will take jurisdiction, and grant relief only when no remedy can be had at law, the contrary is notorious." In this case, as appears by the agreement, it is peculiarly a case for the Equity side of the Court, for the assignment to the defendant was made of one half the wharf on condition that he should pay to Kalaimoku one half of all the moneys received for the use of such

L. Keeliikolani *v.* James Robinson.

wharf and premises. Who can render an account but himself? and this he has agreed to do, and the case comes fully within the powers of a Court of Equity, and the presumption is strong that the adequate remedy could not be had in a Court of Law.

It is further assigned as a cause of demurrer, that it is not alleged in the bill that the defendant is or ever has been in possession of the premises. The plaintiff alleges an assignment of one half of the property, and that he agreed to account for the rents and profits, and that he has not done so, and therefore she calls upon him to account and to surrender the use and occupation of the premises ; although the possession is not alleged in express terms, still it is sufficiently clear to enable the defendant to answer distinctly and intelligently. If he has not .received rents he can so answer, if he has not been in occupancy, he can disclaim. The allegation is sufficient.

It is further assigned, as a cause of demurrer, that it is not alleged that the preliminary conditions of the agreement have been performed by the defendant or by those under whom she claims. This is a sound objection, if by the construction of the agreement, a condition precedent was imposed on the plaintiff. By the agreement it appears that each party agreed to pay one half of the expenses incurred in altering, repairing and improving said wharf—and the defendant agreed to pay one half of all the moneys received for the use of such wharf and premises to the party with whom he made the agreement, his heirs, executors, administrators and assigns. It is clear from the agreement that the defendant was to have possession and charge of the property, as he was to receive and account for the rents and profits—it is equally clear that he might have called upon Kalaimoku to have contributed his portion of the expenses of repairs, but if he did not, and delayed till the receipts were sufficient to liquidate it, they would be applied. for that purpose, and thereby discharge that part of the obligation. Of all this the answer can give information. The agreement does not set forth who shall repair the wharf, but it does declare that each shall pay one half the expenses. If either party omitted to pay his proportion to the other who had made the repairs, the receipts would be properly applied to their payment. But I do not regard it in a matter of account, as a con-

dition precedent, but rather in offset, if rents have been received.

It is further assigned that the bill does not allege any demand for an account of the alleged rents, profits or wharfage, or that this defendant refused to furnish such account. It is very evident that in law and equity a demand for an account under agreements of this nature should be made, and if denied in the answer must be proved. It is equitable that the party should have an opportunity to account, and pay, without a suit, and if no time is specified when this shall be done, it is reasonable that he should have notice, before being subjected to the annoyance and expense of a suit. It should be alleged in the bill that a demand has been made, and refused, and I regard this cause of demurrer as sound in law.

As a further cause of demurrer, it is alleged that the premises should have been described in the bill by metes and bounds. The defendant received the assignment of the property, described as the King's wharf, situated near the south-west angle of the fort in Honolulu, extending in front one hundred yards or thereabouts, and running back one hundred yards or thereabout. It is supposed that the parties understood clearly and distinctly the extent of the premises by the description, and they shall not dispute it, any more than the title, for it is a general rule that a tenant shall not dispute his landlord's title. Reasons undoubtedly may be given in the answer for an accurate survey, and a failure of title may be shown, as a defense, in not taking the charge of property, but the agreement is not defective on its face, and all that either party can claim, as between themselves, is that the agreement shall be carried out as written. Unless third parties have legally interfered to disturb the possession, the defendant will be liable for one-half the moneys received for the use of such wharf and premises. I do not regard it as a legal cause of demurrer, whatever force it may have by an answer, for there may be a state of facts which would vary the responsibility of the defendant, and render a survey of the premises actually occupied by him necessary ; but this does not appear on the face of the bill.

My opinion upon the whole is, that the demurrers are not well taken, and therefore must be overruled, with the exception

L. Keeliikolani *v.* James Robinson.

of the fifth, and as this objection is well founded, the demurrer must be allowed, unless the plaintiff moves to amend the bill. It is true that the bill is not carefully drawn, still its averments are clear and I think may be understood, so that the defendant will have no difficulty in framing a definite and complete answer.

C. C. Harris and R. G. Davis, Esqs., for complainant.

A. B. Bates and J. Montgomery, Esqs., for defendant.

The complainant's counsel, C. C. Harris, amended his bill, but the counsel for the defendant took an appeal generally to the full Court on the remaining points of the demurrer, which was argued on the 22d March last, and on the 13th of August instant the Court delivered judgment on the demurrer as follows:

ALLEN, C. J.

The Court have carefully considered the several causes of demurrer assigned by the respondent to the bill, and are of opinion that the bill upon principles of equity pleading is deficient in not alleging that the respondent entered into the possession of the premises in pursuance of the contract, and occupied the same at the time of filing the bill, deriving profits therefrom, and that it is further deficient in not setting forth distinctly the derivative title of the complainant, by virtue whereof she claims to have inherited the premises described in the contract. The remaining causes of demurrer are overruled.

The demurrer therefore is sustained for the foregoing causes, with leave to the party to amend the bill. The Court will only remark that they regard it as a settled principle of law that a party cannot controvert the title under which he holds an estate, and this principle applies also to the title of the heir, when the lessor dies during the term. There are exceptions to this general rule, as when the tenant was induced to accept possession from his lessee, say from a mistake, or when he has been deprived of possession derived from his lessor by one who has a paramount title, and some others. The question of heirship to the premises remains open. The Court are of opinion that the counsel have misapplied the general doctrine that a demurrer to a bill is sustainable when it is for possession of land, the remedy being, as they allege, ejectment at common law.

This assumes the ground that there is a title to settle, but in this case the party is not permitted to question the title under which he holds by virtue of the contract. By the bill, the rights of the parties under the contract are in question, and not a title adverse to the complainant.

ROBERTSON, JUSTICE.

ON DEMURRER.—After careful examination and reflection, I concur in the opinion of the Chief Justice, that the demurrer must be sustained upon the two points indicated by him. I was at first inclined to give great weight to another point raised by the respondent, as to this being what is denominated in the books an ejectment bill, and therefore not sustainable. But upon reflection, I regard that objection as unsound. It does not appear from the face of the bill that the title to the property is in dispute in this case.

But complainant's bill is clearly defective upon the two points, which are sustained by our present ruling. The title set up by the complainant is a derivative title, and it is not set forth with sufficient clearness and fullness to compel an answer from the respondent. While it is true that neither the respondent, if he took possession of the premises under the grant, nor any one claiming under him, could be permitted to dispute the title of the original grantor, Kalaimoku, yet the respondent may well dispute the right of any other party, claiming an account of profits under the contract, as upon a title derived from Kalaimoku. The complainant seeks no discovery as to her title. She knows what title she has got, and she should have alleged it distinctly and fully, showing the derivation of her title from Kalaimoku, through W. P: Leleiohoku and John Pitt Kinau in succession, stating in each instance whether the party inherited by will, or otherwise, the premises described in the original deed. The complainant has not alleged in her bill that either of the parties through whom she claims to have derived her title inherited the particular property in question, out of which she seeks an account of profits, and the Court cannot presume it.

The other objection is, that the complainant does not allege that the respondent ever took possession of, or improved and

L. Keeliikolani *v.* James Robinson.

derived profit from the premises, or that he was in possession at the time the bill was filed. Unless it is alleged, and admitted or proven, that the respondent took possession of the premises in pursuance of his contract with Kalaimoku, and that he used the premises, deriving profits from their use, the complainant cannot have a decree for an account of profits. And unless it is alleged, and admitted or proven, that respondent is now in possession of the premises, how can the complainant have a decree requiring the respondent to surrender the possession to her?

It seems to me that if the Court should overrule the demurrer, and compel the respondent to answer the bill as it now stands, he might answer it in such a manner, keeping strictly within the rules of pleading, that had the cause gone to a hearing upon the bill and answer, the Court would have found it impossible to make a decree in favor of the complainant, by reason of the defectiveness of the pleadings, and would have been under the necessity of dismissing the bill.

There were two other points raised by counsel for the respondent, in support of the demurrer, upon which the Court does not find it necessary to give any opinion at present. Those points were, first, that Leleiohoku could not have inherited the premises in question from Kalaimoku, who is said to have died in the year 1829, because by the law of this Kingdom, at that time, Kalaimoku himself could not have had a title transmissible by inheritance. Secondly, that every person now claiming title to land in this Kingdom should set up a title founded upon either a Land Commission award, a Royal Patent, or the *Mahele* book of 1848. Should the complainant amend her bill so as to conform to the present ruling of the Court, the respondent will then have an opportunity, if he deems it proper, to press those two points upon the attention of the Court, in such way as counsel may think expedient.